UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| FREDERICK J.  MORGAN, SR., | ) |
| | ) |
|      Petitioner, | ) |
| | ) |
|   v. | )    CAUSE NO.  1:02cr109 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|      Respondent. | ) |

OPINION AND ORDER

This matter is before the court on a "Motion to Modify/Correct Sentence" filed by the petitioner, Frederick J.  Morgan, Sr.  ("Morgan"), on May 3, 2005.  Morgan is proceeding pro se. The government filed its response on June 17, 2005, to which Morgan replied on July 18, 2005.

On July 21, 2005, this court entered an order construing Morgan's motion as a motion under 28 U.S.C. § 2255, and instructing Morgan to either withdraw his motion or file a supplemental brief setting forth all claims.  Morgan filed his supplemental brief on August 24, 2005.  The government filed its response on October 19, 2005.  Upon request, Morgan was given until November 30, 2005 to file his reply.   Morgan failed to file a reply, but he did file, on November 18, 2005, a motion for evidentiary hearing.

Procedural Background

On October 1, 2002, a criminal complaint was filed against Morgan charging him with distribution of more than 5 grams but less than 50 grams of cocaine base "crack", in violation of 21 U.S.C. § 841(a)(1).  On October 23, 2002, a federal grand jury returned a six count indictment against Morgan.  Count 1 of the indictment charged that on or about September 27, 2002, Morgan distributed more than 5 grams but less than 50 grams of cocaine base "crack", in

violation of 21 U.S.C. § 841(a)(1).  Count 2 charged that on that same date Morgan possessed

with intent to distribute less than 100 grams of heroin, in violation of 21 U.S.C. § 841(a)(1).

With leave of the court, the remaining four counts, 3-6, of the indictment were dismissed on

motion of the government on December 2, 2002.  On October 24, 2002, Morgan made his initial

appearance on the indictment and entered a plea of not guilty.  On October 25, 2002, the

government filed its notice pursuant to 21 U.S.C. § 851(a)(1) that it intended to seek an

enhanced sentence.

On June 11, 2003, Morgan, along with his counsel, and the government, entered into a

written stipulation regarding the unavailability of George Perrin ("Perrin") to testify in the case.

During voir dire, the court informed the venire panel that "You will also hear a reference in the

testimony to a man by the name of George Perrin.  George Perrin is dead and unavailable to

testify at trial and cannot be called by either party as a witness."

On June 24, 2003, a jury was selected and a trial began.  Morgan put on evidence,

testifying in his own defense.  On June 25, 2003, the jury returned its verdicts finding Morgan

guilty of Count 1 and on Count 2 guilty of the lesser included offense of possession of heroin.

On June 30, 2003, Morgan, pro se, filed a motion for judgment of acquittal pursuant to

Fed. R.Crim P.  29.  On July 2, 2003, Morgan, pro se, filed an amended motion for judgment of

acquittal.  On July 2, 2003, Attorney Michelle Kraus filed a motion to withdraw.  On August 4,

2003, attorneys Marc Martin and Michael Gillespie entered their appearance on behalf of

Morgan.  On that same date, this court granted Attorney Kraus' motion to withdraw.  On August

8, 2003, this court entered an order giving Morgan's attorneys until September 8, 2003, to either

adopt the pro se motion for acquittal or to file a similar motion on behalf of Morgan.  On

2

September 8, 2003, Morgan's attorneys filed a motion to partially adopt the pro se motion for judgment of acquittal, and for leave to permit Morgan to withdraw allegations of ineffective assistance of counsel without prejudice.  On September 22, 2003, the government filed its response in opposition to Morgan's amended motion for judgment of acquittal.  On October 21, 2003, this court denied Morgan's motion for judgment of acquittal.

A Presentence Investigation Report (PSI) was prepared by the United States Probation Office.  Based upon the amount of crack cocaine involved, 6.4 grams, Morgan's base offense level was 26.  There were additional amounts of drugs which were included as relevant conduct, however, those amounts did not affect the base level of 26.  Morgan's criminal convictions resulted in a score of 8.  At the time Morgan committed the offense, he was on probation and two additional points were added.  Thus, Morgan had a total of ten criminal history points, resulting in a criminal history category of V.

On November 10, 2003, with a total offense level of 26 and a criminal history category of V, resulting in a guideline range of 110 to 137 months, Morgan was sentenced to 120 months imprisonment (statutory mandatory minimum) on Count 1 and 24 months imprisonment on Count 2, to run concurrent to Count 1.  Morgan was sentenced to 8 years supervised release on Count 1 and 1 year on Count 2, to run concurrent.  Morgan was also ordered to pay a mandatory fine of $2,500 on Count 2 and a $200 special assessment.  On November 18, 2003, Morgan timely filed his Notice of Appeal.

On December 23, 2003, Attorney Martin filed a motion with the Seventh Circuit to withdraw as appellate counsel.  On January 2, 2004, Morgan, pro se, filed a motion to extend the time to file his brief and the Seventh Circuit granted the same on January 5, 2004.  On February

19, 2004, the Seventh Circuit entered an Order discharging Attorney Martin from further responsibility in the appeal and granting Morgan's motion to proceed on appeal pro se.  On March 25, 2004, Morgan filed his appeal brief.  On April 21, 2004, the government filed a motion to strike Morgan's brief for failure to comply with the Federal Rules of Appellate Procedure, which motion was denied on April 23, 2004.  The government filed its brief on April 28, 2004.  On May 7, 2004, proceeding pro se, Morgan filed a motion to order records under Rule 10(b)(1).  On May 10, 2004, the Court of Appeals entered an Order denying Morgan's motion without prejudice for renewal before the district court.  On May 14, 2004, the government filed its response in opposition to Morgan's motion.  On June 9, 2004, this court entered a Memorandum of Decision and Order denying Morgan's Rule 10(b)((1)) motion.  On October 21, 2004, the Court of Appeals issued a Mandate and entered a final judgment affirming Morgan's convictions.

On October 25, 2004, Morgan, pro se, filed a motion to recall the mandate.  On October 26, 2004, the Seventh Circuit issued an Order granting Morgan's motion and recalled the Mandate.  On October 26, 2004, Morgan filed a 10c petition for rehearing before the Seventh Circuit.  On February 14, 2005, Morgan, pro se, filed a motion to add alleged unconstitutional sentence pursuant to the Sentencing Guidelines to the appellate proceedings.  On February 22, 2005, the Seventh Circuit issued an Order denying as untimely Morgan's motion to add alleged unconstitutional sentence.  On May 3, 2005, Morgan filed a pro se Motion to Modify/Correct Sentence.

On May 10, 2005, the Seventh Circuit issued an Order denying Morgan's petition for rehearing, which he filed on October 26, 2004, and affirmed his convictions in a published

opinion, <u>United States v. Morgan</u>, 384 F.3d 439 (7th Cir. 2005). The Seventh Circuit held that: (1) Morgan waived his rights under the Speedy Trial Act, precluding review on appeal; (2) the government's opening statement did not constructively amend the Indictment; (3) Morgan's rights under the Confrontation Clause were not violated as a result of the pre-trial death of a participant in a sting operation; (4) adverse evidentiary rulings did not establish bias on part of the district judge; and (5) a claim seeking return of Morgan's vehicle was not properly before the Court of Appeals.

On May 18, 2005, the Seventh Circuit reissued a Mandate. On May 25, 2005, the Seventh Circuit denied Morgan's <u>pro se</u> Motion to Stay and/or Recall Mandate filed on May 23, 2005. On July 21, 2005, this court entered an Opinion and Order advising that it construed Morgan's Motion to Modify/Correct Sentence as a motion under 28 U.S.C. § 2255 and that Morgan could either withdraw his motion or file a supplemental brief setting forth all claims that he wished to present in his § 2255 motion. On August 24, 2005, Morgan filed his supplemental brief setting forth his additional claims.

<u>Factual Background</u>

On September 27, 2002, Fort Wayne Police Narcotics Detective Steven Espinoza ("Espinoza") met with a confidential informant ("CI"), Perrin, regarding the purchase of crack cocaine from Morgan. Detective Espinoza conducted a pre-buy search of the CI and the CI's vehicle, and did not find any contraband. At approximately 5:15 p.m., Detective Espinoza directed the CI to telephone Morgan. Detective Espinoza observed the CI dial number 602-3885 from his cell phone. The telephone conversation between the CI and Morgan was tape recorded. Detective Espinoza recognized and identified the voices on the tape recording as that of the CI

and Morgan.  During the brief telephone conversation, Morgan informed the CI that he was working out but that he would be down there.

In preparation for the controlled purchase, the CI was fitted with a one-way monitoring device and provided $1,100.00 in prerecorded buy money.  Detective Espinoza got in an undercover vehicle with Detective Timothy Bobay ("Bobay") and followed the CI about a block to the CI's residence on Colerick Street, Fort Wayne, Indiana.  The CI's residence was not searched.  Detectives Espinoza and Bobay maintained surveillance of the CI en route to his residence.  Detective Espinoza had instructed the CI not to go off the porch area or to come in contact with anyone, with the exception of Morgan.

Detective Espinoza set up a position concealed behind a tree and lattice about 70 feet across the street from the CI's residence.  Detective Espinoza was equipped with a video camera and receiver where he could overhear and record from a one-way monitoring device.  The video camera was on zoom.  Detective Bobay was about 10-12 feet behind Detective Espinoza seated in an unmarked car.

At approximately 6:15 p.m., Detective Espinoza directed the CI to telephone Morgan again.  This call made by the CI and subsequent five minute meeting with Morgan was captured and recorded on videotape.  Approximately 20 minutes later, Detectives Espinoza and Bobay observed Morgan arrive alone at the CI's residence driving a brown colored Mercedes.  Morgan met with the CI who was seated on the outside porch area of his residence.  The CI was described as a 67 year old male with short gray hair.  Morgan was described as a 45 year old male, muscular build, with long dreadlock braids tied back in a ponytail.  During the videotaped meeting between the CI and Morgan, Morgan is observed reaching down into the front crotch

portion of his pants.  From his training and experience in drug trafficking, Detective Espinoza

knew that suspects sometimes hide their drugs in their crotch area.  On the videotape, Morgan

made several incriminating statements including, but not limited to: (1) I gotta get this out of my

pants; (2) I got two on me now; (3) you just owe me a hundred; (4) that's all, you just owe me

one; (5) ain't nobody looking is it?; (6) so I got a few people I deal to, I got a house, man I got a

house we dealing it out of; (7) yeah, I got some, I got a couple of good soldiers; (8) I come

straight to you; and (9) I keep it in my hand.   Morgan is an active participant in the conversation

and on occasion was heard agreeing with the CI.  The video closes with Morgan leaving the

porch area of the CI's residence.  Detective Espinoza, for the most part, had a constant view of

the CI.  However, there were a couple of occasions when Detective Espinoza had to point the

camera towards the ground so that Morgan would not see the red light from the camera.

Detective Bobay, who maintained constant surveillance of the CI, did not observe the CI come

into contact with anyone except for Morgan.  Detective Bobay did observe a female stick her

head outside the door of the porch.  However, the female dd not come outside and she did not

have any contact with either the CI or Morgan.

Detective Espinoza immediately made contact with the CI after Morgan left.  The CI

handed Detective Espinoza two plastic baggies containing cocaine base "crack", weighing 6.4

grams.  Detective Espinoza observed the CI retrieve $900.00 from his pocket, the remaining buy

money.  Detective Bobay advised other officers in the area that the deal was good and to stop

Morgan.  Detective Espinoza conducted a post-buy search of the CI, and did not find any

contraband or money.

Detectives Robert Kirby ("Kirby") and Miguel Rivera ("Rivera"), were riding together

and positioned about half a block down the street from the CI's residence during the controlled purchase.  They initiated a traffic stop on Morgan's vehicle.  Detective Rivera observed Morgan put something in his mouth and try to swallow it.  From his training and experience in working narcotic cases, Detective Rivera knew that suspects secreted drugs in their mouth to either retrieve later or to dispose.

Detective Rivera drew his gun and ordered Morgan to stop the vehicle.  Morgan eventually stopped the vehicle.  A struggle between Morgan and Detective Rivera ensued.  During the struggle, Detective Kirby observed Morgan reach up to his mouth with his right hand and then throw an item.  Detective Kirby recovered the item discarded by Morgan, a knotted plastic baggie containing 0.11 grams of black tar heroin.  Detective Kirby described the plastic baggie as still wet to the touch from saliva.  Based upon his training and experience, Detective Rivera believed the heroin was intended for sale and not for Morgan's personal use.  Detective Rivera explained that Morgan did not exhibit any signs of personal use: Morgan did not have any needle marks (black tar heroin is usually heated to a liquid form and then injected into the body with a needle) and there was no drug paraphernalia found on Morgan or in his vehicle.

Approximately 15 seconds after the struggle, Detective Rivera recovered two $100.00 bills from Morgan's left pant pocket.  Detective Espinoza compared the two bills recovered from Morgan to a photocopy of the prerecorded buy money.  Detective Espinoza identified the two $100.00 bills as being part of the buy money given to the CI by Detective Espinoza to purchase crack cocaine from Morgan.

Detective Rivera also recovered a cell phone from Morgan's vehicle.  Morgan's cell phone was examined by Detective Espinoza prior to trial and found to still contain the stored cell

telephone number of the CI, as an incoming call on September 27, 2002 at 6:14 p.m.

Morgan admitted that he had a prior 1991 state felony drug conviction for possession of crack cocaine and burglary conviction.  Morgan denied selling any drugs to the CI.  Morgan testified, among other things, that the CI had paid him $200.00 of the $400.00 for tires and still owed him $200.00.  Morgan testified that when he met with the CI on September 27, 2002, the CI paid him the remaining $200.00 for the tires and that was the money that the police recovered from him.  Morgan said that the female had contact with him while he was on the porch and that she and the CI had some kind of deal before he arrived.  Morgan admitted to possessing the heroin recovered by Detective Kirby, but said that it was for his personal use.  Morgan's explanation for reaching into the front crotch area of his pants, as depicted on the videotape, was that he had a "scratch".

Discussion

To obtain relief under Section 2255, a petitioner must show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice."  Boyer v. United States, 55 F.3d 296, 298 (7th Cir. 1995).  Only certain types of claims can be raised in a Section 2255 petition.  "A § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal."  Olmstead v. United States, 55 F.3d 316, 319 (7th Cir. 1995).  Accordingly, there are three types of issues which cannot be raised by way of a § 2255 motion: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the § 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the

failure to appeal.  <u>Belford v.  United States</u>, 975 F.2d 310, 313 (7th Cir.  1992)(overruled on other

grounds, <u>Castellanos v.  United States</u>, 26 F.3d 717 (7th Cir.  1994)).  Failure of a petitioner to

establish either cause or prejudice relating to the third type of issue above requires dismissal of

the habeas petition.  <u>Salberg v.  United States</u>, 969 F.2d 379, 381 (7th Cir.  1992).

A petitioner's failure to raise issues on direct appeal bars him from raising them in a post

conviction proceeding.  <u>Id</u>.; <u>United States v.  Taglia</u>, 922 F.2d 413, 418 (7th Cir. 1991); <u>Norris v.

United States</u>, 687 F.2d 899, 900 (7th Cir.  1982).

In the instant case, Morgan alleges that this court erred when  it allowed the government

and the probation office to enhance his sentence pursuant to 21 U.S.C. § 851 and U.S.S.G. §

4B1.  Relying on <u>Apprendi v.  New Jersey</u>, 530 U.S. 466 (2000), <u>Blakely v.  Washington</u>, 124

S.Ct.  2531 (2004) and <u>United States v.  Booker</u>, 125 S.Ct.  738 (2005),  Morgan alleges that this

court erred when it included the drugs from the house as relevant conduct under U.S.S.G. 1B1.3

when no evidence was presented to the trial jury as to the amounts of drugs recovered from the

house.  Morgan further alleges that this court erroneously calculated his criminal history points

which he claims "boosted" his criminal history category.

In response to Morgan's petition, the government submits that Morgan's claims are not

constitutional issues, but rather non-constitutional issues that could have been raised on appeal.

On February 14, 2005, Morgan filed a motion to add alleged unconstitutional sentence pursuant

to United States Sentencing Guidelines to his appeal.  On February 22, 2005, the Seventh Circuit

issued an Order denying as untimely Morgan's motion to add alleged unconstitutional sentence.

Because Morgan failed to timely raise these sentencing issues in his appeal, the government

submits that he has waived them and is procedurally barred from raising them now.  The

government also asserts that Morgan has shown no cause or prejudice for his failure to timely raise his claims.

The government submits that there is no prejudice to Morgan when the government followed required statutory procedure putting Morgan on notice that it intended to seek an enhanced sentence when it filed its Information pursuant to 21 U.S.C. § 851(a)(1) on October 25, 2002.  Morgan was sentenced to the statutory mandatory minimum of ten years under 21 U.S.C. §41(b)(1)(B)(viii) for his conviction on Count 1.  The government points out that Morgan was not sentenced, as he asserts, as a Career Offender pursuant to § 4B1.1 and thus his reliance upon Auman v.  United States, 67 F.3d 157 (8th Cir.  1995) is misplaced.

Morgan, relying on Apprendi, Blakely and Booker, supra, alleges that this court erred when it included the drugs from the house as relevant conduct under U.S.S.G. § 1B1.3 when no evidence was presented to the trial jury as to the amounts of drugs recovered from the house.  However, in McReynolds, the Seventh Circuit acknowledged that Booker did not move any decision from the judge to the jury, or change the burden of persuasion.  McReynolds v.  United States, 397 F.3d 479, 481 (7th Cir.  2005).  "The decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application."  Id.  In the present case, Morgan's jury determined the statutory maximum penalty when it found that he distributed 5 grams or more of crack cocain, as charged in Count 1.  Additionally, this court properly considered the relevant conduct drugs from Morgan's house even though the additional

11

drugs from the house had no affect on Morgan's applicable guideline range.[1]

With respect to Morgan's argument that this court erroneously calculated his criminal history points, the government asserts that Morgan's criminal history was properly computed including the three points assessed for his prior arson conviction pursuant to U.S.S.G. §§ 4A1.1(a) and $A1.2(e).  The government points out that because Morgan's arson incarceration extended into the fifteen-year period and he had been sentenced to a term of imprisonment exceeding one year and one day, the PSR properly assessed him with the three criminal history points for the arson conviction.[2]

Clearly, Morgan's claims have been waived and he is procedurally barred from raising them now.  Even if these issues had been timely raised on appeal, they would have no merit and there is no prejudice to Morgan.

In his supplemental brief, Morgan alleges a myriad of ineffective assistance of counsel claims before and during trial.  The government contends that Morgan's claims are without merit.  In order to succeed on an ineffective assistance of counsel claim, a defendant is required to make a two-part showing.  First, a petitioner must show that counsel's performance fell below

---

[1]  The base offense level for the 6.4 grams of crack cocaine that Morgan distributed was 26.  Even with the relevant conduct drugs from the house added to the 6.4 grams of crack cocaine, the base offense level was still 26.  With a guideline range of 110 to 137 months, Morgan was sentenced to the statutory mandatory minimum of ten years.

[2]  Morgan committed the instant offense on or about September 27, 2002.  According to the PSR ¶¶ 36-37: Morgan was convicted of the arson on June 6, 1981 and was placed on 5 years probation; on June 6, 1985, Morgan's probation was revoked and he was sentenced to 10 years in the Indiana Department of Corrections; parole records indicate that Morgan was released from this period of incarceration on April 11, 1989 to an early parole supervision program; Morgan was released from said program on August 29, 1989 and returned to prison; Morgan received his final discharge from this prison term on April 27, 1990.

an objective standard of reasonableness as determined by prevailing professional norms. Strickland v.  Washington, 466 U.S. 668, 687-88 (1984).  Second, the petitioner must show that the deficient performance of counsel served to prejudice his defense.  Id.  at 687.  Prejudice will be found only when there is a reasonable probability that, but for the deficient performance of counsel, the outcome of the proceeding would have been different.  Id.  at 694; United States v. Draves, 103 F.3d 1328, 1335 (7th Cir.  1997).  Therefore a petitioner must show both deficient performance and prejudice to prevail on an ineffective assistance of counsel claim, a failure to show one or the other will defeat the claim.  A decision to omit certain arguments does not rise to the level of ineffectiveness if there are reasonable tactical reasons for doing so.  Yarborough v. Gentry, 540 U.S. 1, 4-5 (2003); United States v.  White, 607 F.2d 203, 205 (7th Cir.  1979).  Also a defendant cannot establish ineffective assistance where counsel made a tactical decision not to pursue a course of investigation that would produce evidence that the counsel is otherwise aware of or that would add little to otherwise available information.  United States v.  Jackson, 935 F.2d 832, 846 (7th Cir.  1991).  The decision whether or not to call a witness is a strategic decision left to counsel and is not generally reviewable.  Valenzuela v.  United States, 261 F.3d 694, 699-700 (7th Cir.  2001).  The right to counsel does not include the right to compel counsel to raise frivolous arguments.  See United States v.  Boyd, 86 F.3d 719, 723 (7th Cir. 1996)(explaining that while some decisions always remain with the defendant, the majority of strategic choices are counsel's to make).  Also, counsel's overall performance should be considered.  Mason v.  Godinez, 47 F.3d 852, 857 (7th Cir.  1995).

The government argues that except for his mere allegations or conclusory statements, Morgan has no support for his alleged claims of ineffective assistance of counsel.  See generally

Barkauskas v. Lane, 946 F.2d 1292, 1295 (7th Cir. 1991)(bald allegations of prejudice are insufficient to demonstrate ineffective assistance of counsel); and Galbraith v. United States, 313 F.3d 1001, [fn 14] (7th Cir. 2002).  In the present case, Morgan bears a heavy burden with respect to his alleged claims because the Court's review of counsel's performance is highly deferential and the Court is to avoid the temptation to second guess counsel.  See, Strickland, 104 S.Ct. at 2065. Additionally, Morgan must show that but for his counsel's alleged errors, the result of the proceeding would have been different.

In his brief, Morgan claims that there was perjured testimony presented to the grand jury which influenced the grand jury to indict him and that his counsel refused to bring these alleged matters to the court's attention and/or file a motion to dismiss the indictment. Morgan alleges that the perjured facts related to Detective Espinoza's police report, the videotape, the taped telephone calls, the drugs recovered from the CI and the seizure of drugs, money and other items from his residence.  In response to these allegations, the government argues that there was no perjured testimony presented to the grand jury, and that Morgan's claims are untrue, not supported by the record and wholly without merit.  The government further submits that Morgan's arguments are based on erroneous conjecture and conclusory allegations.  The government points out that Morgan made similar arguments to the Court of Appeals which commented, in part, that Morgan's argument ". . . .lack[ed] any support in the record." Morgan, 384 F.3d at 443. The Court also noted that petit jury's guilty verdicts render harmless any possible error in the grand jury proceedings. Id; See also, United States v. Mechanik, 475 U.S. 66, 72-73 (1986); United States v. Knight, 342 F.3d 697, 713 (7th Cir. 2003).

Morgan asserts that his counsel failed to call Lorraine Church ("Church") and the

defense counsel's investigator, Dan Baur ("Baur"). Morgan claims that Church could have informed the jury: (1) if the CI had entered the house when he arrived and how the dog got out on the yard with the CI; (2) explained what her involvement was on the porch and if she came all the way out to talk; and (3) that no drug transaction happened between Morgan and the CI. Morgan presents no sworn affidavit by Church as to what her testimony would have been if called. See, Prewitt v. United States, 83 F.3d 812, 819 (7th Cir. 1996). The Seventh Circuit has held that ". . . [a] defendant cannot simply state that the testimony would have been favorable; self-serving, speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991).

Any alleged statements made by Church to Baur were not made under oath. Even if Church had testified and the jury considered her testimony, the outcome of the trial would not have been different. The jury would still have been able to consider all the other evidence including the events surrounding the pre and post controlled delivery. This evidence included the testimony of Detective Espinoza, as well as Detective Bobay, who maintained constant surveillance of the CI. Detective Bobay testified that he did observe a female stick her head outside the door of the porch but the female did not come outside and she did not have any contact with either the CI or Morgan. Detective Bobay did not observe the CI come into contact with anyone except for Morgan.

The jury also had the benefit of hearing and seeing the videotape meeting between Morgan and the CI on the porch which certainly could have been used to impeach or contradict any alleged statements by Church. The jury was free to consider reasonable inferences such as Church could not and did not see everything that transpired while Morgan and the CI were on

the porch, and Church could not been be seen or heard on portions of the videotape. As such, the jury would have still found Morgan guilty of count 1 based on all the other overwhelming evidence that the drug transaction did occur. Morgan's counsel made a sound strategic and tactical decision not to call Church and counsel's conduct was not deficient.

Morgan also alleges that counsel was ineffective when counsel failed to call Baur at trial. Contrary to Morgan's assertion, counsel intended to call Baur as to statements allegedly made by Church. However, on May 15, 2003, the government filed a motion in limine opposing any testimony by Baur on this issue on the basis of hearsay. (R. 51; See, Fed. R. Evid. 801(c)). On June 18, 2003, the Court granted the government's motion in limine on this point. (R. 58, June 18, 2003, Minute Entry).

Morgan also claims that counsel was ineffective for signing and having him sign the Stipulation regarding the drugs. Morgan argues that he could not logically stipulate to what the CI gave the police when he was not present when the CI gave the substance to the police. Morgan's argument is flawed. At trial, the Stipulation to which Morgan complains was read to the jury:

[The Prosecutor]:     Your honor, at this time, I would like to have the court read the stipulation into evidence.

The Court:              All right. Ladies and Gentlemen, I'm going to read to you a stipulation that has been entered into by the defendant and the government. A stipulation is an agreement that certain facts are true. Everybody agrees to that so we don't have to go through a process of proving facts about which there is no dispute. And you should accept these facts as though they had been proven true. And the stipulation are, one, the controlled substance in Government's Exhibit 1 is cocaine base crack, a Schedule II controlled substance, weighing 6.40 grams. Two, the controlled substance in Government's Exhibit 2 is heroin, a Schedule I controlled substance,

16

weighing .11 grams. Those facts are agreed to as true and you should accept them as true. Thank you.

(Tr. II at 163-64).

The Stipulation did not prevent Morgan from denying distributing crack or possessing with intent to distribute heroin, which was his theory of defense. To the contrary, the Stipulation disposed of undisputed issues which allowed Morgan's counsel to focus on his theory of defense. It was not ineffective for Morgan's counsel to advise him to sign the Stipulation as the issue was not contested.  Again, the issue was not the identity and weight of the drugs but whether Morgan intentionally and knowingly distributed the crack cocaine and possessed with intent to distribute the heroin. It is not uncommon trial strategy to agree to those things which are not an issue to boost your credibility with the jury and the position you are arguing and to bring the focus on the matters in issue. See Lemon v. United States, 335 F.3d 1095 (8th Cir. 2003); United States v. Davis, 36 F.3d 1424, 1433 (9th Cir. 1994). Here, Morgan's counsel's made a competent and common trial strategy that was successful, in part, as the jury found Morgan guilty of the lesser included offense in Count 2 of simple possession of heroin.

Morgan also argues that his counsel was under a duty to request dismissal of the case pursuant to an alleged speedy trial violation when the case was not tried on December 17, 2002, alleging that such failure allowed the government to "practice its witnesses with hearsay testimony and to manipulate the trial jury to gain a conviction." Morgan's conclusory allegation is without clearly merit and he fails to provide the Court with calculations. Nonetheless, the government submits that Morgan was tried within the 70 day time period and there were appropriate periods of excludable time. See, 18 U.S.C. § 3161(h)(1)(F). The government also submits that it did not "practice its witnesses with hearsay testimony" nor manipulate the jury to

gain a conviction.

The Speedy Trial Act, codified at 18 U.S.C. § 3161-74, provides, in pertinent part, that "the trial of a defendant charged in an Information or Indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the Information or Indictment, or from the date the defendant has appeared before a judicial officer of the court in which charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). The Act does provide for some exclusions that toll the running of the seventy (70) days. See 18 U.S.C. § 3161(h). Applicable here is § 3161(h)(1)(F) which provides as excludable time from the speedy trial computation "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" 18 U.S.C. § 3161 (h)(1)(F); United States v. Henderson, 476 U.S. 321, 326 (1986); United States v. Souffront, 338 F.3d 809, 835 (7th Cir. 2003); United States v. Tanner, 941 F.2d 574, 581 (7th Cir. 1991).

In the present case, the following pretrial motions, responses and briefs were filed by the parties and followed by Orders of the court, and resulted in excludable time under the Speedy Trial Act:

(1) On November 25, 2002, Morgan filed a pretrial motion to suppress statements and evidence. (R. 24). On November 26, 2002, the government filed its response thereto stating, in part, that the charges arising out of Counts 3 - 6 were the result of evidence seized from Morgan's residence and, without conceding any issues raised by Morgan in his motion, moved to dismiss Counts 3, 4, 5 and 6 of the Indictment. (R. 25). On December 2, 2002, the district court entered an Order granting Morgan's motion. (R. 27 - [8 excludable days]);

18

(2) On December 16, 2002, Morgan filed a motion in limine regarding the admissibility of audio and videotapes. (R. 34). On December 17, the district court entered a briefing schedule. (R. 35). On December 18, 2002, the government filed a motion in limine seeking to limit Morgan from introducing evidence of Perrin's criminal convictions more than ten years old. (R. 38). On January 16, 2003, Morgan filed a motion to extend time to file brief in support of his motion in limine. (R. 39). On January 17, 2003, the magistrate judge entered an Order granting Morgan's motion to extend time. (R. 40). On February 3, 2003, Morgan filed his response to the government's motion in limine. (R. 41). On that same date, Morgan filed his memorandum in support of his motion in limine. (R. 42). On March 3, 2003, the government filed its memorandum in opposition to Morgan's motion in limine. (R. 44). On April 7, 2003, the government filed a reply in response to Morgan's opposition to the government's motion in limine. (R. 46). On May 5, 2003, the district court entered its Memorandum and Order granting and denying in part the government's motion in limine and Morgan's motion in limine. (R. 48 - [140 excludable days]);

(3) On May 13, 2003, Morgan filed a motion to continue the pretrial conference and on that same date the magistrate judge entered an Order granting the same. (R. 49-50 - [1 excludable day]); and

(4) On May 15, 2003, the government filed a motion in limine regarding hearsay statements as to Morgan's investigator. (R. 51). On June 12, 2003, Morgan filed his response thereto. (R. 54). On June 16, 2003, the government filed its reply to Morgan's response. (R. 55). On June 18, 2003, the district court granted the government's motion. (R. 56 - [33 excludable

days].[3])  In this case, Morgan's speedy trial clock began on October, 24, 2002, when he made his appearance on the Indictment. On June 24, 2003, a jury was selected and a trial began. As a result of the pretrial motions, there were 182 excludable days.  Thus, Morgan was tried within 57 days, well within the 70 day Speedy Trial Act.   Any motion filed by his counsel to dismiss the indictment would have been meritless and frivolous. Accordingly, Morgan was not denied a speedy trial and there was no violation of the Speedy Trial Act.  Morgan's counsel was not ineffective for not raising a Speedy Trial Act motion.

Morgan also argues that his counsel was ineffective for failing to move for dismissal of the case "when it became known that the government's chief and only witness to the alleged September 27, 2002, drug transaction was dead." (Morgan Br. at 4). Morgan's argument is misplaced and any motion filed by his counsel would have been frivolous. Morgan mistakenly believes that the government could not use its other additional evidence to secure a conviction in this case.  As the record shows, the government's case did not rest solely on Perrin's testimony.

Morgan complains that his counsel was ineffective when counsel, without objection, permitted the government to enhance his sentence for a simple state conviction. (Morgan Br. at 4).  Again, Morgan's claim is without merit and any motion filed by counsel would have been frivolous. The sentence enhancement is a statutory right afforded to the government under 21 U.S.C. § 851(a)(1) when the proper procedure is followed. In this case, the government followed

---

[3]  On June 23, 2003, Morgan, pro se, filed a motion to dismiss the Indictment. R. 59. On that same day, the district court entered an Order striking Morgan's pro se motion. R. 60. Out of the abundance of caution, the government has not included this 1 day as excludable time.

the proper procedure and filed its notice of sentence enhancement prior to trial on October 25, 2002. The fact that defendant's prior felony drug conviction is a state conviction for possession of controlled substances is of no consequence.

Morgan claims that his counsel allowed the government to orally amend the Indictment. (Morgan Br. at 4). Morgan argues that the government's opening statement contradicted a detective's grand jury testimony when the government advised, in part, during its opening statement:

> Now, on the videotape, you will not see a hand-to-hand transaction between the informant, Mr. Perrin, and the defendant. But what you will see or what you will hear, I anticipate, are the very words and actions of the defendant himself that demonstrate that he distributed crack cocaine to the informant.

(Tr. II at 53).

The Seventh Circuit found that "We note that the opening statement in no way contradicts the grand jury testimony because the prosecutor was referring to the quality of the videotape while the detective was relating his account of the transaction." Morgan, 384 F.3d at 443. Clearly, the government's evidence and argument presented at trial to the jury did not broaden the possible bases for conviction beyond those presented by the grand jury. As such, the government did not orally amend the indictment. Morgan's claim is without merit and any motion filed by counsel would have been frivolous.

Morgan also claims that his counsel was ineffective when counsel failed to impeach Detectives Rivera and Espinoza. Despite the conclusory allegations by Morgan, the record bears that counsel vigorously and thoroughly cross examined both Detectives Rivera and Espinoza as to their knowledge, conduct and observations, and previous statements. (Tr. II at 107-24, 166-

21

75).   Morgan also claims that his counsel was ineffective for allowing the government to use

leading questions and hearsay testimony to circumvent testimony of a witness that was not

present.  Again, Morgan's claim is incorrect. On appeal, Morgan raised a similar argument. The

Seventh Circuit held that "But Perrin, of course, did not testify and accordingly there was no

need for Morgan to confront him through cross-examination." Morgan, 384 F.3d at 443-44.

In pretrial motion, counsel for Morgan tried to prohibit the government from admitting

the recorded telephone conversations and the videotape. (R. 34). After considering briefing by

the parties, the Court ruled that the recorded telephone call and the videotape were admissible.

(R. 48). At trial, the Court provided the jury with limiting instructions. It is clear that the

government did not use leading and hearsay testimony to circumvent the testimony of a witness

that was not present and ample evidence was presented at trial to support Morgan's convictions[4],

therefore, even if counsel had moved for a dismissal at the end of the government's case, the

motion would have been denied.

The record clearly reflects that Morgan's counsel did not fall outside the range of

reasonably competent representation and that counsel did not render constitutionally defective

---

[4]At trial, the jury heard testimony from the police regarding the events surrounding the controlled delivery, that is, the pre- buy search of the CI, police surveillance of the CI, the pre-recorded telephone conversations of Morgan and the CI, heard and saw the videotaped meeting with Morgan and the CI, heard Morgan actively participating in the conversation with the CI at the meeting (recorded statements of CI placed Morgan's statements in context and Morgan adopted statements made by CI), the incriminating statements made by Morgan, saw Morgan reach into the front crotch area of his pants and heard Detective Espinoza explain that sometimes drug suspects hide drugs in their crotch, Detective Espinoza's contact with the CI after Morgan left, Detective Espinoza described how he received the crack cocaine from the CI, the post-buy search of the CI, the events surrounding the traffic stop and apprehension of Morgan, recovery of the two $100 bills prerecorded buy money from Morgan, and Morgan's admission that he possessed the heroin for his personal use.

assistance of counsel. Morgan was effectively represented and he has not shown deficient performance or prejudice as to any of his conclusory allegations of ineffective assistance of counsel as required under <u>Strickland.</u>  Accordingly, for all the foregoing reasons, Morgan's Section 2255 petition will be denied.

As the record is clear in this case, this court finds that an evidentiary hearing is not necessary and, thus, Morgan's "Motion for Evidentiary Hearing" will also be denied.

Conclusion

On the basis of the foregoing, Morgan's "Motion to Modify/Correct Sentence", which this court construed as a Section 2255 petition, is hereby DENIED.  Further, Morgan's "Motion for Evidentiary Hearing" is also hereby DENIED.

Entered: January 11, 2006.

<u>s/ William C.  Lee</u>
William C. Lee, Judge
United States District Court

23