**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No.: 1:02-CR-109 |
| | ) | |
| FREDERICK J. MORGAN | ) | |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court on two motions filed by the *pro se* Petitioner, Frederick J. Morgan ("Morgan"). The first is a "Motion for Return of Property Pursuant to Rule 41(e), Fed.R.Crim.Proc." filed on March 6, 2006. The United States of America ("the government") filed a response in opposition to the motion on May 22, 2006, and Morgan has not filed any reply (which would have been due by June 25, 2006). The second motion filed by Morgan, on May 30, 2006, did not include a caption. However, the first paragraph of the pleading states that it is intended as a "Motion to Modify Sentence Pursuant to 18 U.S.C. § 3573." The government filed a response in opposition to that motion on June 9, 2006, and Morgan filed a reply on June 21, 2006.

For the reasons discussed herein, the Motion for Return of Property is DENIED and the Motion to Modify Sentence is DENIED.

**DISCUSSION**

**1. Motion for Return of Property.**

In this motion, Morgan is requesting a court Order returning to him property that was seized following his arrest on drug charges on September 27, 2002. Morgan was subsequently convicted, on June 25, 2003, of possession with intent to distribute cocaine and possession of heroin. The government seized, as a part of that criminal proceeding, a 1989 Mercedes Benz

automobile and $18,020.00 in U.S. currency.  In his motion, Morgan states that "these items are not [sic] longer needed, and the underling [sic] Criminal proceeding against Mr. Frederick Morgan have [sic] concluded, these personal items must now be returned to the defendant pursuant to Fed.R.Crim.Proc. [sic] 41(e)."  Motion for Return of Property, Docket at 125, p. 1. This motion, which is less than two pages long, presents no legal argument.  It merely asks for a court Order directing the government to return both the Mercedes Benz and the cash to Morgan. It does however, as quoted, cite Fed.R.Crim.P. 41(e).  That Rule is titled "Search and Seizure." However, subsection (e) of that Rule spells out the procedure for the issuance of a warrant. Subsection (g) of the rule pertains to the return of seized property and it is that subsection that Morgan no doubt meant to cite.  That subsection states, in its entirety, as follows:

> (g) Motion for Return of Property.  A person aggrieved by an unlawful search and seizure of property or the deprivation of property may move for the property's return.  The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion.  If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

The court, then, assumes that Morgan's citation to Rule 41(e) was merely a typographical error and he intended to cite subsection (g).[1]  In its response, the government presents a time line outlining the procedural steps it took to effect the civil forfeiture proceedings with respect to Morgan's Mercedes Benz and cash.  United States' Response to Defendant's Motion for Return of Property ("Response to Motion for Property"), Docket at 133.  The government response includes nearly two dozen exhibits evidencing that procedure and setting out precisely how it

---

[1] The government makes the same assumption.  United States' Response to Defendant's Motion for Return of Property, Docket at 133, p. 5.

2

was done.

Civil forfeiture proceedings in cases such as this are governed by the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 981 *et seq.* The specific procedure that the government must follow to effectuate a forfeiture of property is set forth in 18 U.S.C. § 983. The time line presented in the government's response brief, and the many exhibits attached thereto, are intended to show that all of the requisite steps mandated by the statute were met in this case, with respect to both the Mercedes and the cash.

The government states in its response brief that "'[d]istrict courts lack jurisdiction to review the merits of an administrative forfeiture unless the agency failed to follow statutory and constitutional due process.'" Response to Motion for Property, p. 4 (quoting *United States v. Robinson*, 434 F.3d 357, 364 (5th Cir. 2005)). Indeed, the court in *Robinson* held that "[o]nce an administrative forfeiture is complete, a district court may review only 'whether the forfeiture comported with constitutional due process guarantees.'" *Id.* at 362 (quoting *Kadonsky v. United States*, 216 F.3d 499, 506 (5th Cir. 2000)). The government also cites the case of *Mesa Valderrama*, 417 F.3d 1189 (11th Cir. 2005), wherein the court, addressing a federal defendant's challenge to the administrative forfeiture of a check seized following his arrest on money laundering charges, held that "[s]ection 983(e) is 'the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute.' . . . This court has determined that it lacks jurisdiction to review the merits of administrative or non-judicial forfeiture determinations. . . . Instead, the court's review 'is limited to determining whether the agency followed the proper procedural safeguards . . . .'" *Id.* at 1196 (internal citations omitted). In the case at bar, Morgan does not state in his motion how the forfeiture proceeding was allegedly faulty. In fact, he does

3

not even alleged that it *was* faulty.  However, given that he is proceeding *pro se*, the court will assume that Morgan is challenging process the government employed in the forfeiture of the Mercedes and the cash.

A federal prisoner challenging the administrative forfeiture of personal property originally seized as part of a criminal investigation, and who alleges that the forfeiture proceeding was fatally flawed, can proceed by filing a civil action.  The provisions of Fed.R.Crim.P. 41(g) are not a proper procedural tool for such a claim.  Rule 41 applies to criminal proceedings in which a defendant alleges that his or her property was taken in an unlawful search, and a motion under that Rule would be a part of that criminal proceeding.  However, once property has been administratively forfeited, a defendant seeking its return (or, money damages in lieu of the return of the property) must do so by filing a separate civil action in the district in which the property was seized.  See, e.g., *Okoro v. Callaghan*, 324 F.3d 488 at 490 (7th Cir. 2003) ("Federal Rule of Criminal Procedure 41(g) . . . entitles a person to the return of his property that has been *unlawfully* seized by [the federal government][.]" (italics added); *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004) (Rule 41(g) can be used unless property has already been forfeited as part of underlying criminal proceeding).

In the present case, Morgan's property was administratively forfeited long ago, and his only remedy is to attempt to challenge the administrative forfeiture of that property in a separate civil action.  The Seventh Circuit addressed this very situation in *United States v. Howell*, 354 F.3d 693 (7th Cir. 2004), a case with facts virtually identical to those in the present case.  Howell was a federal prisoner whose automobile had been seized by the DEA following his arrest on drug trafficking charges.  The vehicle was administratively forfeited by the agency.  Two years

4

after he was sentenced, Howell filed a motion for return of the vehicle, and also attempted to use Fed.R.Crim.P. 41 as the basis for his motion. Howell filed his petition in the district in which he was sentenced. The district court dismissed the petition, believing that it lacked subject-matter jurisdiction because the vehicle had actually been seized in another district. The court of appeals first found that the district court had erred in dismissing on those grounds and vacated the judgment of dismissal. The court then went on to address the procedural aspects of Howell's claim. The court explained as follows:

> An administrative forfeiture does not confer in rem jurisdiction on any court, because it bypasses the judicial system. *United States v. One 1979 Chevrolet C-20 Van,* 924 F.2d 120, 123 (7th Cir.1991); see also *Linarez v. United States Dept. of Justice,* 2 F.3d 208, 211-12 (7th Cir.1993). . . . The district judge erred in holding that there was no subject-matter jurisdiction in his district. The judge failed to note Howell's apparent failure to comply with the usual procedural requirements for maintaining a federal civil suit, such as the payment of a filing fee, and, since he is a prisoner, the limitations on prisoner civil rights suits imposed by the Prison Litigation Reform Act, 28 U.S.C. § 1915. The judge treated Howell's challenge to the administrative forfeiture as if it were a phase of the criminal proceeding against Howell. Yet even if his motion had been a motion under Rule 41(g) for the return of property obtained in a search, rather than an attempt to challenge an administrative forfeiture, the proceeding would have been a civil proceeding subject to the requirements that we have noted, and perhaps to others peculiar to challenges to federal administrative forfeitures. *Peña v. United States,* 122 F.3d 3 (5th Cir.1997). It is true that we have permitted Rule 41(g) motions to be filed in the criminal proceeding to which the property sought to be returned relates, *Okoro v. Callaghan,* 324 F.3d 488, 490 (7th Cir.2003); *United States v. Taylor,* 975 F.2d 402 (7th Cir.1992), but that permission is a natural implication of the fact that Rule 41(g) is a rule of criminal rather than civil procedure, and, as the *Peña* decision holds, does not make the proceeding touched off by the motion a criminal proceeding and excuse the moving party from having to comply with the rules applicable to civil proceedings. The civil nature of the present case is even clearer, since it is a challenge to an administrative forfeiture. Though it seeks relief similar to that of a Rule 41(g) motion–namely the return of property–it is not founded on that rule.

*Howell*, 354 F.3d at 695-96. Accordingly, Morgan's motion is not valid. Rather, if it is his intent to challenge the forfeiture of the automobile and/or the currency, he must do so by way of

5

a civil action. In addition to the requirements applicable to the filing of any new lawsuit in federal court, Morgan must conform to the requirements of the Prison Litigation Reform Act. These requirements include, among many others, the paying of a filing fee or the filing of documents necessary to request that the fee be paid in installments.[2]

In the interest of judicial economy, and to ensure that Morgan is fully informed of the facts and evidence before he endeavors to file such a lawsuit, the court notes that the government's response to his motion addresses the matter in the same way the court assumes it would if Morgan were to file a proper civil suit challenging the forfeiture. For that reason, a discussion of that response is warranted.

The government's response brief and the exhibits attached thereto establish that the forfeiture proceeding in this case occurred as follows:[3]

> 1. September 27, 2002–Morgan was arrested after selling drugs to a confidential informant. During the course of the illegal transaction, he drove the Mercedes Benz which is the subject of this motion. Following his arrest, he accompanied police officers to his residence and directed them to a bag containing the cash, which is also a subject of this motion;
> 2. October 23, 2002–Morgan was charged by way of an Indictment;
> 3. October 8, 2002–the Mercedes Benz was "adopted" by the Drug Enforcement Administration ("DEA") for forfeiture;
> 4. December 2, 2002–the DEA sent notice of seizure and intent to administratively forfeit the Mercedes to Morgan's residence. Identical notice was also sent to the same address to Morgan's wife Sidney, whose name also appeared on the vehicle's title;

---

[2] Morgan should also heed the possible adverse consequences contained in the PLRA should he decide to proceed with a civil action in this or any other federal court. These include, but are not limited to, the prisoner's obligation to pay the entire filing fee for such a suit, the prisoner's exposure to costs should he lose the suit, and the prisoner's exposure to the so-called "three strikes" provision in 28 U.S.C. § 1915(g).

[3] The government did not address the Seventh Circuit's decision in *Howell* (or the decision in *Okoro*), but proceeded to address Morgan's motion on its merits.

      5.  December 6, 2002–Both notices referenced above were received at Morgan's residence by his daughter, Ebony Morgan,[4] who signed the certified mail return receipts;

      6.  December 9, 16, and 23, 2002–the DEA published legal notices of the seizure, noting deadlines for filing of claims to property, in the *Wall Street Journal* newspaper;

      7.  January 7, 2003–the DEA received a letter on behalf of Morgan, through his attorney, Michelle Kraus, dated January 3, 2003, stating a claim to the vehicle;

      8.  January 27, 2003–the DEA sent attorney Kraus a letter rejecting the claim of Morgan on the basis that it was untimely filed.  The letter provided additional time by which Morgan could submit a petition for remission pursuant to statute;

      9.  February 23, 2003–the DEA, having not received a timely and properly executed claim to the vehicle, issued a Declaration of Forfeiture forfeiting the vehicle;

      10.  February 24, 2003–the DEA received a petition for remission regarding the vehicle from Sidney Morgan, again through attorney Michelle Kraus, which was denied on August 13, 2003.  Thereafter, on September 9, 2003, DEA received a letter from attorney Kraus informing the agency that she was no longer representing Sidney Morgan;

      11.  October 8, 2002–the DEA "adopted" the currency that is the subject of this motion for forfeiture;

      12.  December 2, 2002–the DEA issued a notice of seizure and intent to administratively forfeit the currency;

      13.  December 6, 2002–Sidney Morgan accepted delivery of said notice and signed the certified mail receipt;

      14.  December 9, 16, and 23, 2002–the DEA published notice of the seizure of the currency, with deadlines for the filing of claims, in the *Wall Street Journal* newspaper;

      15.  February 12, 2003–the DEA, not having received any claims or petitions with regard to the currency, issued a Declaration of Forfeiture of the currency.

Response to Motion for Property, pp. 1-4; Government's Exhibits 1-15; Declaration of Robert Porzeinski, Acting Forfeiture Counsel, Drug Enforcement Administration; Declaration of Larry D'Orazio, Acting Forfeiture Counsel, Drug Enforcement Administration and Exhibits 1-4 thereto.

      The evidence appears to demonstrate clearly that the statutory requirements of 18 U.S.C.

---

[4]  The Presentence Report prepared in Morgan's case confirms that Ebony Morgan is his adult daughter and that Sidney Morgan is his wife.

§ 983 were complied with in this case with respect to both the Mercedes Benz and the currency.[5]

It appears that the DEA complied with the statute's notice requirements. The requisite notices were sent within 60 days of the date of the seizure of the property. 18 U.S.C. 983(a). No timely claims to either the Mercedes or the currency were received by the DEA.[6] The evidence appears to establish that the statutory requirements of 18 U.S.C. § 983 were met and the forfeitures of the Mercedes Benz and the currency were carried out properly by the DEA. And once again, Morgan's present motion does not specifically challenge the forfeiture proceedings or allege that the requirements of the statute were not met. Rather, he simply maintains that the items are "no[] longer needed" and "must be returned" to him. Motion, p. 1. The fact that his criminal trial is over and the items are no longer needed as evidence for any further proceedings does not,

---

[5] It is rather curious that the notices were sent to Morgan's residence rather than directly to him, since he was in federal custody at the time these events took place. It is also curious that the DEA published the seizure notices in the *Wall Street Journal* rather than in a local or regional newspaper, since the purpose of such notices are to alert potential claimants to the property of the deadlines for filing claims. It would seem that notices published in a local or regional newspaper would be more likely to reach interested parties. However, Morgan's wife and daughter received notices of the seizures in a timely manner. And both Morgan and his wife attempted to file claims to the property even though they were unsuccessful for the reasons discussed elsewhere in this Order. Therefore, while the procedure followed by the DEA may not appear to have been the most efficient under the circumstances, it complied with the statute and obviously did not deprive either Morgan or his wife of their opportunity to challenge the forfeitures.

[6] While the claim filed by attorney Kraus on behalf of Morgan was apparently untimely by only a matter of days, the agency did extend time for Morgan, on his own or through his attorney, to remedy that problem. That was not done. As for Sidney Morgan, her petition for remission as to the Mercedes Benz was apparently timely. However, Mrs. Morgan was asserting an innocent owner defense pursuant to 18 U.S.C. 983(d) in her attempt to recover the vehicle. The DEA sent attorney Kraus a rejection of that claim, which the agency had reviewed on its merits. Response to Motion for Property, Exhibit 13. As stated previously in this Order, this court is without jurisdiction to review the merits of an administrative forfeiture action or a claim against that action. Of course, it does not matter since the motion before the court was not filed by Sidney Morgan and she was not a defendant in the underlying criminal case.

8

of course, mean that they must be returned to him.  Morgan, it appears, had notice and opportunity to challenge the forfeiture of the vehicle and the currency, and failed to do so timely and properly (at least according to the record as it stands now).  This would mean that no violation of Morgan's due process rights, assuming that is what he is alleging, occurred in this case.  In light of these facts and evidence, it is difficult to envision how Morgan might be able to challenge the forfeiture even if he were to bring a proper civil suit attempting to do so.  Of course, given that Morgan has not presented any evidence in support of his current motion, the court cannot say now that he has no basis on which to challenge the forfeiture.  But for the purposes of the motion that is before the court, it must be denied since it presents no viable legal basis for the claims Morgan is attempting to assert.

   **2.  Motion to Modify Sentence.**

In his motion to modify his sentence, Morgan raises an issue with regard to the fine imposed as part of his sentencing.  He petitions this court "pursuant to the provisions of 18 U.S.C. § 3573 to modify his sentence in this matter."  Motion to Modify, Docket at 134, p. 1.  He takes issue with the fact that as part of his sentence, this court imposed a fine in the amount of $2,500.00 and a special assessment of $200.00.  Morgan argues that "the court did not complete a 'payment schedule' pursuant to 18 U.S.C. § 3572 and 3664(A)-(C)."  *Id.*  In his prayer for relief, Morgan asks this court to "modify his fine and assessment fee pursuant to 18 U.S.C. § 3573."  *Id.*, p. 2.

Morgan's concern over his fine and assessment apparently arose recently during a "semi-annual Progress Meeting" in March 2006 with a counselor and official with the Bureau of Prisons.  *Id.*, p. 1.  Morgan explains the situation as follows:

9

> Counselor . . . and Unit Manager . . . forced the defendant to sign a contract obligating him to pay the Bureau of Prisons $110.00 per month even though the defendant's earnings are $18.00.  Defendant plead [sic] his case . . . only to be told that failure to sign the monthly contract would constitute "refusal" to pay and as such, defendant's security level points will be raised, resulting in loss of halfway house opportunity, eligibility for a federal prison camp, inability to participate in certain education classes, top bunk restriction in an undesireable [sic] area and commissary restriction.
> . . .
> As a result of [the BOP officials'] actions, defendant resorts to using substantial amounts of his limited monthly phone time peddling money from family and friends to satisy his contract out of fear of reprisal.  Further, the actions . . . have caused the defendant emotional anguish, fear of staff and threat to his marriage and due to the fact [sic] that the BOP has no payment scheduling authority pursuant to 18 U.S.C. § 3572n(6) and (7), their actions violate the "Equal Protection" clause of the United States Constitution and 15 U.S.C. § 1692, False and Misleading Statements in Connection with the Collection of a Debt.  Therefore, the defendant petitions this court to remedy this matter prior to the filing of a civil rights action.

*Id.*, pp. 1-2.  Morgan clearly feels that the BOP has violated his constitutional rights and the Fair Debt Collection Practices Act[7] by requiring him to sign and abide by a fine payment schedule that he argues is beyond his means.

In its response to this motion, the government asks the court to construe it as a motion pursuant to 28 U.S.C. § 2255 and dismiss it summarily as a second or successive such petition. Government's Response to Petitioner's Non-Captioned Pleading Filed Pursuant to 18 U.S.C. § 3573 ("Government's Response"), Docket at 135, p. 1.  The government argues that since Morgan already filed a motion to modify his sentence under § 2255 in May of 2005, which this court denied, this second petition must be dismissed pursuant to the amendments to § 2255 that

---

[7] The Fair Debt Collection Practices Act is not relevant to this motion.  The Bureau of Prisons is not a "debt collector" as defined in that statute (15 U.S.C. § 1692a(6)) and a federal criminal fine is not a "debt" as defined in the statute (15 U.S.C. § 1692a(5)).  Accordingly, the court will not address this allegation further.

10

require a federal prisoner to obtain certification from a court of appeals before a second such petition can be filed. *Id.*, pp. 2-3. The government argues that "this court should construe Morgan's current petition as a successive § 2255 petition and dismiss it for lack of jurisdiction." *Id.*, p. 3.[8]

In his reply brief, however, Morgan clarifies what he is seeking by way of this motion. He states that he is not challenging the fact that a fine or special assessment were imposed, or even the amount of those penalties. "Defendant's Reply to Government's Motion to Construe Defendant's Motion as Claim for [sic] Under Federal Habeas Corpus Statute, § 2255" ("Defendant's Reply"), Docket at 136, p. 2. Rather, he says, he is only moving the court "to follow through with its statutory obligation under 18 U.S.C. § 3572 and 28 U.S.C. § 3664(A)-(C) and set a payment schedule." *Id.*, p. 2.[9] Therefore, argues Morgan, this is not a second or successive petition under § 2255.

The court agrees with Morgan that this motion is clearly *not* a petition under § 2255. It is clear on the face of Morgan's pleadings that he is not challenging the fact or duration of his conviction or sentence. Rather, he is challenging a procedure or policy of the BOP in forcing him, as he claims, to pay more money each month towards his fine than he is able (and/or

---

[8] The government is correct that amendments to 28 U.S.C. § 2255 were enacted in 1996 as part of the Antiterrorism and Effective Death Penalty Act. A federal prisoner who wishes to file a second or successive petition under that statute must first obtain certification (i.e., "approval") to do so from the federal appellate court for the circuit in which the district court sits. Failure to obtain this certification means that the district court has no jurisdiction to entertain the petition. *Nunez v. United States*, 96 F.3d 990 (7th Cir. 1996).

[9] Morgan's reference to § 3664 is irrelevant. First, because there is no statute designated as "28 U.S.C. § 3664." There is, however such a section in Title 18, which is what Morgan is referring to. (In fact, he does cite "18 U.S.C. § 3664" other places in his briefs.) That section of Title 18 refers to restitution orders, and no restitution order was imposed in this case.

11

wanting) to pay. Furthermore, he alleges that this court failed to establish a proper "payment schedule" with respect to his fine. Therefore, the court interprets this motion by Morgan as one pursuant to 28 U.S.C. § 2241.[10]

The Seventh Circuit has directly addressed this issue, albeit in mostly unpublished opinions. In an opinion that was published, the Seventh Circuit discussed the issues of fines, the provisions of 18 U.S.C. § 3572, and an inmate's challenge to a BOP-imposed fine payment plan. *McGhee v. J.J. Clark*, 166 F.3d 884 (7th Cir. 1999). In *McGhee*, a federal prison inmate sought an injunction against the BOP to prevent collection of money from him for payment of a fine and a special assessment imposed on the prisoner as part of his sentence. While Morgan is not seeking injunctive relief in his motion (at least not expressly), the facts are otherwise almost identical. McGhee, like Morgan, was challenging the BOP's imposition of a fine payment schedule with which he disagreed. McGhee also complained, as does Morgan, that when he refused to accept the BOP's payment plan, he was given less desirable housing within the institution. McGhee, again like Morgan, had argued that the sentencing court had an obligation to establish a payment schedule when it imposed a fine and that the BOP was usurping the district court's authority by implementing a payment schedule of its own. The court of appeals rejected McGhee's challenge. The court held and explained as follows:

---

[10] Morgan references 28 U.S.C. § 2241 in his reply brief at page 2. He states, however, that his present motion "does not meet the criteria of either § 2241 or § 2255 where the defendant has not challenged his conviction or sentence, and has not even challenged the amount of his fine/restitution order." *Id.* As discussed in this Order, § 2241 is, in fact, the proper (and only) vehicle by which Morgan may challenge the BOP's imposition of a payment plan with regard to his fine. Furthermore, his reliance on 18 U.S.C. § 3573 as the foundation of his motion is erroneous (as the government points out in its response brief on page 1), since that section of Title 18 permits the government, not a defendant, to file a motion to modify a fine or restitution order in a criminal case.

12

> [Petitioner's] argument that the sentencing court was required to establish a schedule of installment payments is groundless. Cases in which a district court expressly has delegated to the BOP its discretion to schedule fine payments have no application here. The sentencing court has the option, but not the duty, to provide for payment of a fine in installments. *See* 18 U.S.C. § 3572(d)(1).

*McGhee*, 166 F.3d at 886. Accordingly, Morgan's argument that this court erred in not establishing a specific installment plan (i.e., a specific monthly payment amount) by which Morgan should pay his fine and/or special assessment is not well taken.

In Morgan's Judgment of Conviction entered in this case, this court expressly included a section entitled "Schedule of Payments." Judgment, Docket at 81, p. 6. That section stated that "payment of the total criminal monetary penalties shall be due as follows: [l]ump sum payment of $200.00 due immediately, balance due . . . shall be made from any wages the defendant may earn in prison *in accordance with the Bureau of Prisons' Inmate Financial Responsibility Program*. Any portion of the fine that is not paid in full at the time of the defendant's release from imprisonment shall become a condition of supervision." *Id.* (italics added). Thus, this court directed that payment of Morgan's fine and assessment shall be made throughout the duration of his term of imprisonment, and that the BOP, through its Inmate Financial Responsibility Program ("IFRP") should calculate and administer a payment plan or schedule. Morgan's contention that this court should "follow through with its statutory obligation under 18 U.S.C. § 3572 . . . and set a 'payment schedule[.]'" is groundless.

As stated above, the Seventh Circuit has addressed this issue in several other cases also. In *United States v. Lambert*, 162 Fed.Appx. 616, 2006 WL 26167 (7th Cir. 2006), inmate Lambert had filed a motion (citing 18 U.S.C. § 3572 as its basis) challenging the BOP's imposition of a fine payment schedule against him, and its decision to place him on "refusal"

13

status when he refused to accept that payment schedule.  The Seventh Circuit held that:

> Complaints about the BOP's administration of the IFRP are cognizable under 28 U.S.C. § 2241, *Matheny v. Morrison*, 307 F.3d 709, 712 (8th Cir. 2002) (stating that inmates' challenges to IFRP payment schedules 'concern the execution of a sentence, and are therefore correctly framed as § 2241 claims'); *McGhee v. Clark*, 166 F.3d 884, 885-87 (7th Cir. 1999), but only if the inmate files a petition in the district of confinement, 28 U.S.C. § 2241(d); *Moore v. Olsen*, 368 F.3d 757, 759 (7th Cir. 2004), [and] after exhausting his administrative remedies . . . . Lambert satisfied neither of these conditions.  Moreover, to the extent Lambert wanted the sentencing court to remit the balance of the fine or impose its own payment schedule, he lacked a statutory basis for seeking relief.  Only the government may seek remission, *United States v. Goode*, 342 F.3d 741, 743 (7th Cir. 2003) . . . .

*Lambert*, 162 Fed.Appx. at 616-17.[11]  Had this court, as part of Morgan's sentence and judgment, imposed a specific installment payment plan, such as $25.00 per month for example, and then the BOP attempted to impose its own repayment plan in contravention of that court directive, then Morgan arguably would have a claim for relief under § 2241.  *Chavez v. Truesdale*, 36 Fed.Appx. 859 (7th Cir. 2002).  In *Chavez*, the sentencing court had specifically ordered that Chavez should pay a restitution order in full "'immediately to the extent possible'" and "'at the rate of not less than $25 per month.'" *Chavez*, 36 Fed.Appx. at 860 (quoting the sentencing court).  When the BOP attempted to implement a repayment plan in contravention of that court directive, Chavez refused to comply and challenged the BOP's actions in court.[12]  The Seventh

---

[11] As several of the cases cited and discussed by the court in this Order are unpublished, the Clerk of the Court is instructed to include copies of the following cases when sending a copy of this Order to Morgan: *United States v. Lambert*, 162 Fed.Appx. 616 (7th Cir. 2006); *Chaney v. Olsen*, 92 Fed.Appx. 362 (7th Cir. 2004); and *Chavez v. Truesdale*, 36 Fed.Appx. 859 (7th Cir. 2002).

[12] The Seventh Circuit also noted in this case that "[a]lthough Chavez labeled his suit as a civil rights action, it is in essence a challenge to the execution of his sentence and as such must me addressed as a petition for habeas corpus under 28 U.S.C. § 2241. . . . Exhaustion of administrative remedies . . . is a prerequisite to seeking relief under § 2241 . . . ."

Circuit held that under that scenario, the district court should then review the matter to determine whether its imposition of a specific payment plan impermissibly delegated judicial authority to the BOP through its IFRP. But that is not the case here. This court specifically directed that Morgan should pay a lump sum amount and such regular amounts as are "in accordance with the [BOP's IFRP]." Thus, the BOP's utilization of its IFRP was and is proper in light of this court's judgment. In *Chaney v. Olsen*, 92 Fed.Appx. 362 (7th Cir. 2004), inmate Chaney filed a petition under 28 U.S.C. § 2241 in an effort to stop the BOP, through its IFRP, from collecting money from him in order to help pay part of a restitution order imposed by the sentencing court. The court's Order had stated that the restitution amount was due "in full immediately." The BOP then set out to implement a partial repayment plan through the IFRP, setting times and amounts of payment. In that case, the Seventh Circuit explained that when a district court in its sentence "orders immediate payment, it is not an impermissible delegation for prison authorities to set the payment schedule. . . . Ordering immediate payment is not an improper delegation, because 'such directives generally are interpreted to require not immediate payment in full but 'payment to the extent that the defendant can make it in good faith, beginning immediately.'" *Chaney*, 92 Fed.Appx. at 362. The court further held that such an order "does not preclude the BOP through the IFRP from ensuring that a defendant makes good-faith progress toward satisfying his debt." *Id.* (citing *McGhee*, 166 F.3d 884). The situation in *Chaney* is akin to what Morgan is facing.

This court's judgment directed that Morgan pay a lump sum towards his criminal monetary penalties, and also specifically instructed that payments should be made through the BOP's IFRP while he remained incarcerated. As a result, any dispute about the amount or scheduling of Morgan's payments through the IFRP is between him and the BOP. Not only has

15

Morgan failed to state any legal basis for challenging the BOP's actions, he has also failed to present any evidence whatsoever (or, for that matter, to even allege) that he has exhausted whatever administrative remedies are available to him.  For these reasons, his motion will be denied.

## CONCLUSION

For the reasons discussed herein, the Motion for Return of Property filed by the petitioner Frederick J. Morgan is DENIED; Morgan's untitled motion, which the court has interpreted as a motion pursuant to 28 U.S.C. § 2241 is also DENIED.

Date: July 31, 2006.

              /s/   William C. Lee
                William C. Lee, Judge
                United States District Court
                Northern District of Indiana